### PASSINO v. TAMER.

(Supreme Court, Appellate Division, Third Department. May 21, 1914.)

EASEMENTS (§ 36*)—EVIDENCE—SUFFICIENCY.

In an action of trespass, evidence *held* to show that defendant had a way over the locus in quo, and that plaintiff was bound to keep it open for his benefit, notwithstanding inaccuracies in plaintiff's deed which did not properly locate the way.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 77, 78, 88–93; Dec. Dig. § 36.*]

Application for an order granting a reargument, and for an order granting permission to appeal to the Court of Appeals. Reargument and leave to appeal denied.

For former opinion, see 146 N. Y. Supp. 1103.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

John E. Judge, of Plattsburgh, for appellant.
Patrick J. Tierney, of Plattsburgh, for respondent.

LYON, J. This action was brought to recover damages on account of alleged trespasses committed by respondent upon the real estate of appellant in the spring of 1912. The defense was that the locus in quo was a street running between appellant's two lots over which the respondent had the right of passage to and from his land on the west side of appellant's lots to Reed street on the east side thereof. It appears that on January 1, 1897, Katharine Welch, wife of William Welch, was the owner of a tract of about 18 or 20 acres of land situated in the village of Cadyville, Clinton county, N. Y., and that at various times from that date to the time of her death, which probably occurred in 1900, she conveyed parcels therefrom, with and without her husband joining in the conveyances; that on April 27, 1900, she and her husband conveyed to the plaintiff by warranty deed the following described premises:

"All that certain parcel or lot of land situated in the village of Cadyville, town of Plattsburgh, Clinton county, New York, described and bounded as follows, viz.: The N. E. corner beginning at a stake in the center of street

running south from the Old Plank road and running south along center of street one hundred and fifteen and one-half feet (115½); thence west one hundred eighty-one and one-half feet (181½); thence north one hundred and fifteen and one-half feet (115½) to street running east from Iron Bridge road; thence east along center of said street one hundred eighty-one and one-half feet (181½) to place of beginning, supposed to contain one-half acre more or less, which said deed was recorded in the Clinton county clerk's office May 17th, 1900."

Thus by this deed the plaintiff was notified of the existence of a street running from the Iron Bridge road east to this lot. It further appears that in April, 1902, William Welch acquired title to the portions of the tract unsold at the time of the death of his wife, and that in August, 1904, he conveyed by warranty deed to William McGarr, as the result of negotiations had between Welch and the plaintiff, a lot south of the above-described lot, bounded as follows:

"All that tract or parcel of land situated in the village of Cadyville, county of Clinton, state of New York, and bounded as follows: The northeast corner commencing at a stake in the center of a street running south from the Old Plank road, said street being the west line of Thomas Reed's land and running south in center of said street 115½ feet; thence west 181½ feet; thence north 115½ feet to center of a street running east and west; thence along center of said street 181½ feet to place of beginning, containing one-half acre more or less, which deed was recorded in the Clinton county clerk's office September 10th, 1904."

This lot was conveyed by the same description by McGarr to plaintiff by warranty deed in May, 1907, which was recorded in June, 1912. Thus the plaintiff had notice of the existence of a street between the two lots. In May, 1909, the defendant purchased by contract from Welch the lands lying west and south of these two lots owned by the plaintiff, and entered into possession thereof. The question at issue is whether a street was reserved by the grantor in his conveyances to plaintiff and McGarr, one-half of which was to be taken off each lot, as it was the act of defendant in cutting the wire fence which the plaintiff erected at the west end of this alleged street, two rods in width, in order to pass from his lands to Reed street over the alleged street, and the passing by defendant over such alleged street, which constituted the act of trespass complained of. That the conveyance by Katharine Welch to plaintiff mistakenly described the street as being on the north instead of the south side of the lot conveyed was well established by the following proof. The north boundary of the lot was the south boundary line of the lot conveyed to Harney and Galvin by Katharine Welch in September, 1897, without any reservation of a right of way along the south side thereof; hence the street would have been but one-half the intended width if located on the north side of the lot. William Welch testified that, before he sold the lots to the plaintiff, he had a survey made of the whole tract, and a right of way two rods in width staked out from the Iron Bridge road to the Reed line, the center of which right of way ran along the line between the plaintiff's two lots; that the witness and the plaintiff together measured the lot sold by the witness to the plaintiff, and that the witness then told the plaintiff that there was a street between the two lots; that the lot was a corner lot, and that the plaintiff could build on both sides of the lot,

for if he could sell one lot it would help him towards building a house; that McGarr was the son-in-law of the plaintiff, who negotiated for McGarr for the purchase of the lot from Welch; that plaintiff said he wanted a lot on the opposite side of the street from his other lot. It appears that plaintiff built his house on the north side of his lot, and hence that, if there is a street there, his house stands partly within the street. The defendant testified that, at the time he bought the land of Welch, he knew of the street between plaintiff's lots, and that in the summer of 1912 plaintiff told him he would tell his men not to plow the road. The plaintiff testified that, in running out the lot which he bought from Welch, they established the northeast corner of the lot in the Reed road at the corner of the Galvin and Harney lot, and set the stake there, and that they set stakes at the other corners of the lot; that the deed, the written part of which he could not read, was left at his house with his wife; that he fenced the lot on the north, west, and south sides, and cultivated it, and that, when the McGarr lot was bought, the measurements were made from plaintiff's lot stakes, and that plaintiff built fences on the west and south sides of the McGarr lot, Welch furnishing the fence posts, and cultivated both lots; that he never knew of the alleged reservation of the streets until he was told by defendant in 1912; that he permitted defendant to take down his fence at the place where the right of way is claimed and draw manure through to his land when plaintiff had no crop in; that, when plaintiff put the fence up again, defendant took it down four times to a width of 13 feet. The wife of the plaintiff testified that she saw defendant go through along the alleged right of way several times in 1910 and 1911, and that he took the fence down, and put it up after passing through.

It appears that, in several conveyances of lands to the west of plaintiff's lots, the Welches reserved a street. However, in some of the deeds the street was mistakenly stated as being on the opposite side of the lot, but that in the spring of 1912 all the adjoining owners had built fences from the Iron Bridge road easterly to plaintiff's lots, inclosing a strip of land two rods wide in the direct line of the alleged street upon plaintiff's lots.

The action was brought in county court and was tried before the judge, without a jury, who, among other things, found that about 1897 William Welch laid out the tract into lots with this street two rods wide running through the tract from the Iron Bridge road to the east end of the tract; that the deed from Welch to the plaintiff is inaccurate in that the premises are stated as bounded on the north by a street, whereas it was intended that the premises should be bounded on the south by a street; that at the time the plaintiff purchased the lot from defendant, and also at the time he purchased the lot from McGarr, he knew that the lots were subject to said right of way; and that, since purchasing his land lying west of the lots, defendant has used said right of way across plaintiff's lots, and passed over the same with loads without permission of and without hindrance from plaintiff until the spring of 1912, when plaintiff erected the fences which were torn down by defendant. As conclusions of law, the court found that plain-

tiff's lots were subject to the easement of this right of way, and that the defendant was entitled to pass over it and to have it kept open for his benefit, and to a judgment dismissing the complaint, with costs. The first finding is incorrect in stating that William Welch was the owner of the tract in 1897, as Katharine Welch, his first wife, was the owner, but this error is not material. The map, plaintiff's Exhibit 1, is not to be seriously considered, as is demonstrated by plotting the lots in the order in which the conveyances were made. William Welch was a farmer, and himself measured off the lots with a tape measure. The Passino deed was stated in respondent's brief, presented upon the argument of the appeal, to have been drawn by a country notary. While inaccuracies plainly exist in the descriptions in several of the deeds, each of the grantees of the ten parcels, except the plaintiff, seems to be agreed as to what was the intention of the parties to the several conveyances, as to the location of the right of way, and to have been willingly governed by such intention, as is evidenced by the open roadway extending from the Iron Bridge road to the westerly line of the plaintiff's lots as located by him. The contention of the plaintiff is not supported by the facts, and, if sustained, would work injustice to the owners of the other parcels in the tract. No difficult questions of law were involved, but the questions were of fact, and further consideration of the record confirms us in our decision that the conclusion reached by the trial court was fully justified by the evidence.

The motions for a reargument before us and for leave to go to the Court of Appeals should be denied. All concur.